# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIE DIFIORE, <br><br> PLAINTIFF, <br><br> v. <br><br> CSL BEHRING, U.S., LLC, <br><br> and <br><br> CSL BEHRING, LLC, <br><br> DEFENDANTS. | CIVIL ACTION NO. 13-5027 |

### AMENDED NOTICE OF DEPOSITION

To:     David S. Fryman, Esquire
        Kelly T. Kindig, Esquire
        Ashley L. Wilson, Esquire
        Ballard Spahr LLP
        1735 Market Street, 51st Floor
        Philadelphia, PA 19103-7599
        fryman@ballardspahr.com
        kindigk@ballardspahr.com
        wilsona@ballardspahr.com

        Please take notice that pursuant to Fed. R. Civ. P. 30(b)(6), on ~~Monday May 11,~~

~~2015, beginning at 10:00 a.m., or another~~ date and time agreed upon, counsel for

Plaintiff Marie DiFiore, will take the deposition of Defendant CSL Behring, LLC ("CSL"

or "Defendant") through one or more of its officers, directors, managing agents or other

persons who consent to testify on its behalf.  The deposition will be held at Bell & Bell

LLP, 1617 John F. Kennedy Blvd., Suite 1020, Philadelphia, PA 19103 or at another

location agreed upon, before an officer authorized by law to administer oaths pursuant to

the Federal Rules of Civil Procedure and/or an authorized videographer.  The oral

examination will continue from day to day until completed.

      Defendant CSL is required to designate one or more of its officers, directors,

managing agents or other persons who consent to testify on its behalf, with respect to the

following subject areas:

1. The full and complete details, circumstances and reasons for placing Ms.
   DiFiore on a performance improvement plan on or about May 7, 2012, or at
   any other time during her employment.

2. The full and complete details, circumstances and reasons for issuance of the
   January 19, 2012 Warning Letter to Ms. DiFiore.

3. The full and complete details, circumstances and reasons for engaging a coach
   for Ms. DiFiore in or around November or December of 2011.

4. The full and complete details, circumstances and reasons for generating, or
   requesting the creation of, the Feedback Report of Cheryl Weir and Associates
   dated March 16, 2012.

5. The full and complete details, circumstances and reasons for any and all
   discipline issued to Plaintiff, formal or informal, at any time during her
   employment with CSL.

6. Any and all actions taken by CSL, if any, in response to Ms. DiFiore's
   memorandum of February 1, 2012 to Ms. Cannizzo.

7. Any and all actions taken by CSL, if any, in response to Ms. DiFiore's
   memorandum of January 25, 2012 to Trina Hendri.

8. Any and all actions taken by CSL, if any, in response to Ms. DiFiore's
   complaint to Human Resources regarding being placed on a performance
   improvement plan.

9. The eligibility requirements, work duties, essential job functions and/or
   responsibilities of each and every position or positions held by Plaintiff during
   her employment with Defendant CSL, and how these eligibility requirements,
   work duties, essential job functions and/or responsibilities were
   communicated to Ms. DiFiore.

10. The full and complete details of any performance evaluations or job reviews, formal or informal, including peer reviews, of Plaintiff Marie DiFiore during her employment with CSL.

11. The full and complete details, circumstances and reasons for promoting Ms. DiFiore at any time during her employment with CSL.

12. The full and complete details of each and every meeting held by or attended by any ~~Agent,~~management level employee, human resources employee, supervisor above Ms. DiFiore in her chain of command, owner or principal of CSL where the subject matter of Ms. DiFiore's Complaint, Ms. DiFiore's claims, or CSL's defenses were discussed including~~, but not limited to,~~ identification of the individuals in attendance, date, location, and substance of each such meeting.

13. The full and complete details of any communications between or participated in by any management level employee, human resources employee, supervisor above Ms. DiFiore in her chain of command, owner or principal of CSL regarding Plaintiff informing Ms. Morris, in the fall of 2010, that she was uncomfortable with her target sales projections for RiaSTAP, and follow up between Plaintiff and Mr. Neff and/or Ms. Morris regarding this issue or any issue Plaintiff raised with Ms. Morris.

14. The full and complete details of any action taken by Ms. Morris, CSL, or any management level employee, human resources employee, supervisor above Ms. DiFiore in her chain of command, owner or principal of CSL ~~any individual~~ as a result of Ms. Morris informing CSL of Plaintiff's informing Ms. Morris, in the fall of 2010, that she was uncomfortable with her target sales projections for RiaSTAP.

15. The full and complete details of CSL's policies, procedures, practices, or guidelines regarding complaints related to off-label marketing, which were in effect at any time between Plaintiff's hire and the present.

16. The full and complete details of CSL's policies, procedures, practices, or guidelines regarding complaints related to compliance, unethical practices, illegal conduct, and/or retaliation for making such complaints, which were in effect at any time between Plaintiff's hire and the present.

17. The full and complete details of any and all training regarding the subjects of Topic 15 or 16 conducted by or on behalf of CSL from Plaintiff's hire through the present.

18. The course materials used at any training conducted by CSL identified in response to Topic 17 above.

19. Complaint(s), charge(s), report(s) or allegation(s), whether formal or informal, written or oral, relating to retaliation for reporting off-label marketing, compliance issues, unethical practices, and/or illegal conduct made by any present or former employee of CSL at any time between Ms. DiFiore's hire and ~~the present~~December 31, 2013, including the nature and date of the complaint, the identity of the complainant, the identity of the persons who received or were counseled in connection with each complaint, and any actions taken to rectify the situation or as a result of the complaint.

20. Civil Actions filed against Defendant CSL, or its agents or employees, alleging retaliation for reporting off-label marketing, compliance issues, unethical practices, and/or illegal conduct, at any time between Ms. DiFiore's hire and ~~the present~~December 31, 2013.

21. Complaint(s), charge(s) or allegation(s), whether formal or informal, written or oral, raising issues of off-label marketing made by any present or former employee of CSL to any management level employee, human resources employee, supervisor above Ms. DiFiore in her chain of command, owner or principal of CSL at any time between Ms. DiFiore's hire and ~~the present~~December 31, 2013, including the nature and date of the complaint, the identity of the complainant, the identity of the persons who received or were counseled in connection with each complaint, and any actions taken to rectify the situation or as a result of the complaint.

~~1.Civil Actions filed against Defendant CSL, or its agents or employees, alleging retaliation for reporting off-label marketing, compliance issues, unethical practices, and/or illegal conduct, at any time between Ms. DiFiore's hire and the present.~~

~~23.~~22.  The full and complete ~~complete~~ details of any and all complaints made by Ms. DiFiore to any management level employee, human resources employee, supervisor above Ms. DiFiore in her chain of command, owner or principal of CSL ~~employee of CSL~~ during her employment regarding her employment with CSL including ~~, but not limited to,~~ complaints regarding off-label marketing, compliance, unethical practices, illegal conduct, and/or retaliation, and ~~including, but not limited to,~~ any actions taken by CSL in response to said complaints.

~~24.~~23.  The complete details of any investigations conducted by or on behalf of CSL into ~~any complaints made by Ms. DiFiore to any employee of CSL during her employment~~the complaints identified in response to Topic 22, including the results of such investigations, any actions taken by CSL in response to said investigation and results, the identification of any employees or agents of CSL warned, counseled, reprimanded and/or disciplined in any way in connection with Ms. DiFiore's complaints, and the nature of such discipline.

4

25.24.  The full and complete reasons for the contention, if CSL makes such a contention, that any of Ms. DiFiore's complaints regarding off-label marketing, compliance issues, unethical practices, and/or illegal conduct were unfounded.

26.25.  The full and complete reasons for the contention, if CSL makes such a contention, that CSL's efforts to partner with or otherwise collaborate with(Ashley/Kelly to suggest alternate language) Rotem in connection with RiaSTAP does not suggest that CSL was engaged in off-label marketing.

27.26.  The full and complete reasons for the contention, if CSL makes such a contention, that CSL's efforts to partner with or otherwise collaborate with(Ashley/Kelly to suggest alternate language) Haemonetics in connection with RiaSTAP does not suggest that CSL was engaged in off-label marketing.

28.27.  The full and complete details surrounding the Polaris Report including , but not limited to, the reason(s) for its creation, any investigation conducted to obtain information to generate the report, any conclusions reached other than those contained in the Report itself, any drafts of the Report prior to the final version, the identification of any and all individuals employed by CSL who had communications with the creators of the Report and the contents of any such communications, and any action(s) taken by CSL in response to the Report.

29.28.  The full and complete details regarding any and all policies, standards, practices and/or rules CSL contends, if it makes such a contention, that Plaintiff violated or failed to adhere to during her employment with CSL including CSL's explanation as to why Ms. DiFiore's alleged conduct was in violation of the policies, standards, practices and/or rules identified.

30.29.  Any and all performance evaluations or job reviews, formal or informal, of Janice Cannizzo, Lynne Powell, and Allan Alexander during their employment with CSL. (We will agree to eliminate provided CSL assures us that all performance evals or job reviews of these individuals have already been produced).

31.30.  Any and all disciplinary action taken by CSL against, formal or informal, of Janice Cannizzo, Lynne Powell, and/or Allan Alexander during their employment with CSL including , but not limited to, the reason or reasons for such disciplinary action.

32.31.  The full and complete details of Janice Cannizzo, Lynne Powell, Ingolf Sieper and Allan Alexander's employment with CSL including dates of employment, supervisory authority, supervisor(s), location(s) where worked, rates of pay, job description and essential job functions.

33.32.  Any and all complaints of retaliation made by any of CSL's employees other than Ms. DiFiore against Janice Cannizzo, Lynne Powell, Allan Alexander, any individual identified in Plaintiff's Complaint, Plaintiff's Initial Disclosures, or CSL's Initial Disclosures, or any individual responsible for the decision to discipline Plaintiff at any time from the beginning of Ms. DiFiore's employment with CSL through the present.

34.33.  The identification of employees of Ms. DiFiore's level or higher at of CSL including , but not limited to, their job titles and last contact information, who were placed on a performance improvement plan at any time from Ms. DiFiore's hire and December 31, 2013, and details regarding whether they: 1) were later determined to have successfully completed the objectives or goals of the performance improvement plan, 2) were later determined not to have successfully completed the objectives or goals of the performance improvement plan, 3) resigned within one year of being placed on a performance improvement plan, 4) were terminated by CSL within one year of initially being placed on a performance improvement plan, 5) were offered a severance package within one year of initially being placed on a performance improvement plan, 6) had the length of their performance improvement plan extended beyond the initial length of time provided for completion of the objectives therein, 7) remained employed by CSL six months subsequent to being placed on a performance improvement plan, and/or 8) remained employed by CSL one year subsequent to being placed on a performance improvement plan.

35.34.  The identification of employees of Ms. DiFiore's level or higher at of CSL including , but not limited to, their job titles and last contact information, who were offered severance packages in lieu of CSL placing such employees on a performance improvement plan, or who resigned after CSL had decided to place such employee on a performance improvement plan but prior to CSL formally placing such employee on a performance improvement plan.

1. The full and complete details, circumstances and reasons for Defendant's decision to terminate and/or end Defendant's employment relationship with Janice Cannizzo including, but not limited to, whether any evaluations, complaints, counseling or discipline (formal or informal, and whether related to the allegations in Ms. DiFiore's Complaint, interactions with Ms. DiFiore, or otherwise) contributed in whole or in part to CSL's decision.

1. The full and complete details, circumstances and reasons for Defendant's decision to terminate and/or end Defendant's employment relationship with Lynne Powell including, but not limited to, whether any evaluations, complaints, counseling or discipline (formal or informal, and whether related to the allegations in Ms. DiFiore's Complaint, interactions with Ms. DiFiore, or otherwise) contributed in whole or in part to CSL's decision.

6

38.35. The full and complete details, circumstances and reasons for Defendant's decision to terminate and/or end Defendant's employment relationship with Allan Alexander, including , but not limited to, whether any evaluations, complaints, counseling or discipline contributed in whole or in part to CSL's decision.

39.36. The full and complete details, circumstances and reasons for providing coaching and compliance training regarding CSL Behring's policies to Dr. Sieper in or around August 2012.

1. Dr. Sieper's employment relationship, if any, between CSL or any of its parents, affiliates, subsidiaries, related corporate entities, or divisions prior to July 1, 2011.

41.37. The full and complete details, circumstances and reasons for CSL hiring Dr. Sieper into the role of Executive Vice President Commercial Operations on or about July 1, 2011.

42.38. The identification, for the time period from Ms. DiFiore's hire through the present December 31, 2013, of employees of CSL other than Ms. DiFiore who were issued corporate American Express or other credit cards and had past due balances on such cards at any time, failed to submit monthly expense reports, and/or used their corporate card for personal use including , but not limited to, their job titles, last contact information, and whether the identified employees were disciplined (including the nature and severity of such discipline) as a result of their past due balances, failure to submit monthly expense reports, and/or personal use.

43.39. The full and complete details of the investigation conducted by CSL or on its behalf, if any, into Allan Alexander's reporting compliance issues including , but not limited to, the results of such investigation, any actions taken by CSL in response to said investigation and results, the identification of any employees or agents of CSL warned, counseled, reprimanded and/or disciplined in any way in connection with Allan Alexander's complaints, and the nature of such discipline.

44.40. The full and complete details of any litigation or administrative charge in which Ingolfd Sieper, Lynne Powell, Janice Cannizzo, or any decision maker with respect to the decision to discipline Ms. DiFiore was, or is, a party or witness, or in which such individual's name has appeared in a Complaint or administrative charge. This Topic is limited to litigation or administrative charges relating to Ingolf Sieper, Lynne Powell, Janice Cannizzo, and the decision maker or makers' employment with CSL.

7

1.The full and complete details of the document collection efforts undertaken by CSL in this matter including, but not limited to, a detailed description of how the documents were collected, from whom documents were solicited, whose documents were searched for responsive documents, and whether or not the documents were solicited from that person.

46.41.   The full and complete details of any document preservation and retention efforts undertaken by Defendant in connection with this matter including , but not limited to, the timing of any such efforts, the individuals, if any, who were instructed not to destroy or discard anyto preserve and collect documents, the categories of documents CSL employees were instructed to preserve and collect, if any, what specific actions CSL employees were instructed to take in preserving and collecting documents, if any, whether any of the individuals so instructed not to destroy or discard any documents destroyed or discarded any documents and if so, when, and whether any individuals destroyed or discarded responsive documents after the beginning of CSL's efforts, if any, to preserve or retain documents on whatever date or dates those efforts began.

47.42.   Any and all communications between Dr. Sieper and CSL, subsequent to Dr. Sieper's cessation of employment with CSL, in which Dr. Sieper indicated that he would not be available as a witness at trial, to appear for deposition, and/or otherwise participate in litigation in this matter including , but not limited to, the date of such communications, substance of such communications and participants to such communications.

48.43.   Any and all communications between Dr. Sieper and CSL or its counsel regarding this matter or Ms. DiFiore, subsequent to Dr. Sieper's cessation of employment with CSL including , but not limited to, the date of such communications, substance of such communications and participants to such communications.

Pursuant to Rule 30(b)(2) the witness or witnesses are instructed to bring with them to the deposition all documents relied upon as a source for their information or which were consulted in developing their knowledge of the matters set forth above as topics 1 through 438, or which the witness or witnesses reviewed, looked at, or consulted in preparation for their deposition.

James A. Bell, IV, Esq.
Bell & Bell LLP
One Penn Center
1617 JFK Blvd. – Suite 1020
Philadelphia, PA 19103
Attorneys for Plaintiff
Marie DiFiore

Dated: ~~April 10~~July 7, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Deposition

was served upon counsel for Defendant CSL Behring, LLC via hand delivery and

electronic mail on ~~April 10~~July 7, 2015 addressed as follows:

David S. Fryman, Esquire
Kelly T. Kindig, Esquire
Ashley L. Wilson, Esquire
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
fryman@ballardspahr.com
kindigk@ballardspahr.com
wilsona@ballardspahr.com

James A. Bell, IV, Esquire

9

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIE DIFIORE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 13-05027 |
| | : | |
| CSL BEHRING, U.S., LLC, et al., | : | |
| | : | |
| Defendants. | : | |

## INITIAL DISCLOSURES OF DEFENDANT CSL BEHRING, LLC

Pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, Defendant CSL Behring, LLC[1] ("CSL Behring"), by and through its undersigned attorneys, submits the following Initial Disclosures. These disclosures are made without waiver of or prejudice to any privilege or objection to disclosure, examination, production, or admissibility available to CSL Behring with respect to the subject matter of these disclosures.

## I.    INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION THAT CSL BEHRING MAY USE TO SUPPORT ITS DEFENSES[2]

In addition to Plaintiff Marie DiFiore, the following persons are likely to have discoverable information that CSL Behring may use to support its defenses:

1.    Janice Cannizzo, Senior Director of Marketing Coagulation, Acquired Bleeding, and Specialty Products for CSL Behring

---

[1]    Plaintiff also names "CSL Behring, U.S., LLC" as a defendant. No such entity, however, exists.

[2]    CSL Behring reserves the right to supplement or amend these disclosures before trial. In addition to the persons identified below, CSL Behring incorporates by reference any other persons referenced in the pleadings in this action, identified in the initial disclosures of any other party, and/or mentioned in one or more of the documents described in Section B below (and in documents that may be identified in the future), some or all of whom also may have information that CSL Behring may use to support its defenses in this matter.

2.      Trina Hendri, Senior Human Resources Director, North America and Latin America Commercial Operations, for CSL Behring

3.      Susan Morris, former Manager, Compliance Program, for CSL Behring

4.      John Neff, Senior Counsel Chief Compliance Officer for CSL Behring

The above witnesses have information relating to Plaintiff's claims and her employment with CSL Behring.  These individuals may be contacted in care of counsel for CSL Behring.

## II.      DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS IN CSL BEHRING'S POSSESSION, CUSTODY, OR CONTROL THAT THEY MAY USE TO SUPPORT THEIR DEFENSES

All documents described below are in CSL Behring's possession or are in the possession of undersigned counsel in their Philadelphia office.

1.      Document's related to CSL Behring's employment policies.

2.      Documents related to Plaintiff's employment with CSL Behring.

3.      Documents related to plaintiff's job duties and responsibilities and the performance thereof.

4.      Documents related to the allegations in Plaintiff's Complaint.

## III.      COMPUTATION OF ANY CATEGORY OF DAMAGES CLAIMED

CSL Behring has not asserted a claim for damages in this action.

## IV.      EXISTENCE OF INSURANCE AGREEMENTS UNDER WHICH INSURER MAY BE LIABLE TO SATISFY PART OR ALL OF A JUDGMENT AGAINST CSL BEHRING

CSL Behring is not a party to an insurance agreement under which an entity carrying on an insurance business may be liable to satisfy all or part of any judgment that may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

The foregoing disclosures are made based upon information presently known or reasonably available to CSL Behring.  These disclosures will be supplemented, if necessary, pursuant to Federal Rule of Civil Procedure 26(e).

Respectfully submitted:


/s/ Ashley L. Wilson
David S. Fryman (I.D. No. 57623)
Kelly T. Kindig (I.D. No. 203278)
Jonathan S. Satinsky (I.D. No. 209295)
Ashley L. Wilson (I.D. No. 309321)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 864-8105

*Attorneys for Defendant CSL Behring, LLC*

Date:  January 27, 2014

## CERTIFICATE OF SERVICE

I, Ashley L. Wilson, hereby certify that, on this day, the foregoing Initial

Disclosures of Defendant CSL Behring, LLC was served on Plaintiff by sending a true and

correct copy via e-mail and first class mail, postage prepaid, addressed as follows:

Jennifer C. Bell, Esquire
Bell & Bell LLP
One Penn Center
1617 John F. Kennedy Boulevard, Suite 1020
Philadelphia, PA 19103

Dated:  January 27, 2014                              /s/ Ashley L. Wilson
                                                      Ashley L. Wilson

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIE DIFIORE,                                  :
                                                :
            Plaintiff,                          :
                                                :
      v.                                        :      CIVIL ACTION NO. 13-05027
                                                :
CSL BEHRING, U.S., LLC, et al.,                 :
                                                :
            Defendants.                         :

## OBJECTIONS AND RESPONSES OF DEFENDANT CSL BEHRING, LLC TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant CSL Behring, LLC ("CSL Behring"), by its undersigned counsel, objects and responds to Plaintiff Marie DiFiore's First Set of Interrogatories to Defendant as follows:

## I.      GENERAL OBJECTIONS

The following general objections apply to each interrogatory and are incorporated into each specific response.  CSL Behring also reserves the right to raise objections at trial regarding the admissibility of any of the information that it provides or agrees to provide.

A.      CSL Behring objects to each interrogatory to the extent that it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

B.      CSL Behring objects to each interrogatory to the extent that it is overly broad as to scope.

C.      CSL Behring objects to each interrogatory to the extent that it is overly broad as to time.

DMEAST #18421704 v3

     D.     CSL Behring objects to each interrogatory to the extent that it seeks information that is protected from discovery by the attorney-client privilege or the work-product doctrine or that constitutes or discloses the mental impressions, conclusions, opinions or legal theories of an attorney in this or any other litigation, or that is protected from disclosure by any other privilege or immunity.

     E.     CSL Behring objects to each interrogatory to the extent that it is unduly burdensome or harassing.

     F.     CSL Behring objects to each interrogatory to the extent that it is vague or ambiguous.

     G.     CSL Behring objects to each interrogatory to the extent that it seeks information already in Plaintiff's possession.

     H.     CSL Behring objects to each interrogatory to the extent that it seeks information of a private, personal and/or confidential nature about individual employees or former employees of CSL Behring, the disclosure of which would result in an undue invasion of privacy with respect to such individuals.

     I.     CSL Behring objects to each interrogatory to the extent that it seeks confidential and/or proprietary information.

     J.     CSL Behring objects to each interrogatory to the extent that it seeks information that is not in the possession or control of CSL Behring.

     K.     CSL Behring objects to each interrogatory to the extent that it calls for a legal conclusion.

L.      CSL Behring objects to the Definitions, Instructions and Interrogatories to the extent that they seek to impose upon CSL Behring discovery obligations that are greater than those imposed by the Federal Rules of Civil Procedure.

M.      CSL Behring's use in these Objections and Responses of any term defined in the Definitions, Instructions or Interrogatories does not constitute acceptance of Plaintiff's definitions of those terms.

## II.     OBJECTIONS TO DEFINITIONS

The following objections to Plaintiff's definitions apply to each interrogatory and are incorporated into each specific response:

A.      CSL Behring objects to the definitions of "Defendants" and "CSL" to the extent they suggest that these terms refer interchangeably to CSL Behring and "CSL Behring, U.S., LLC." "CSL Behring, U.S., LLC" does not exist as an entity. CSL Behring states that the responses contained herein and the documents produced herewith are solely on behalf of CSL Behring.

B.      CSL Behring objects to the definition of "Agent" to the extent Plaintiff intended it to include attorneys of CSL Behring. Specifically, CSL Behring objects to this definition to the extent that it seeks to include information that is protected from discovery by the attorney-client privilege or the work-product doctrine or which constitutes or discloses the mental impressions, conclusions, opinions or legal theories of an attorney in this or any other litigation, or which is protected from disclosure by any other privilege or immunity.

### III.   OBJECTIONS AND RESPONSES TO INTERROGATORIES

1.   State the names and addresses of all persons having knowledge of any fact Relating to the subject matter of Ms. DiFiore's Complaint, Ms. DiFiore's claims, or Defendants' defenses, and state with specificity what is the factual knowledge possessed by each individual identified and how that knowledge was obtained.

**OBJECTION**:  CSL Behring objects to this interrogatory because it seeks

information that is protected from discovery by the attorney-client privilege or the work-product

doctrine.  CSL Behring further objects to this interrogatory to the extent that it seeks information

that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the

discovery of admissible evidence.

**RESPONSE**:  Subject to and without waiving the foregoing objections, in

addition to Plaintiff, the following individuals have knowledge of the subject matter of this

action:

- Janice Cannizzo, Senior Director Marketing Coagulation, Acquired Bleeding, and Specialty Products for CSL Behring; has information relating to Plaintiff's claims and her employment with CSL Behring; may be contacted in care of counsel for CSL Behring.

- Trina Hendri, Human Resources Director, North America and Latin America Commercial Operations, for CSL Behring; has information relating to Plaintiff's claims and her employment with CSL Behring; may be contacted in care of counsel for CSL Behring.

- Susan Morris, former Manager, Compliance Program, for CSL Behring; has information relating to Plaintiff's claims and her employment with CSL Behring; may be contacted in care of counsel for CSL Behring.

- John Neff, Senior Counsel Chief Compliance Officer for CSL Behring; has information relating to Plaintiff's claims and her employment with CSL Behring; may be contacted in care of counsel for CSL Behring.

- Lynne Powell, Senior Vice President, Commercial Operations, North America; has information relating to Plaintiff's claims and her employment with CSL Behring; may be contacted in care of counsel for CSL Behring.

- Christian Peters, Senior Director North America Medical Affairs; has information relating to Plaintiff's claims and her employment with CSL Behring; may be contacted in care of counsel for CSL Behring.

- William Alan Alexander, M.D., former Director, Medical Therapeutic Area Leader; has information relating to Plaintiff's claims and her employment with CSL Behring; may be contacted in care of counsel for CSL Behring.

2.    If you claim that Ms. DiFiore has made any admissions Relating to the subject matter of Ms. DiFiore's Complaint, Ms. DiFiore's claims, or Defendants' defenses, state: the date made; where made; the name and address of each person present at the time the admission was made; the contents of the admission; and if in writing, attach a copy.

**OBJECTION**: CSL Behring objects to this interrogatory because it is overly broad as to scope and unduly burdensome. CSL Behring further objects to this interrogatory because it is vague, as the term "admissions" is not defined. CSL Behring further objects to this interrogatory to the extent that it calls for a legal conclusion and would require CSL Behring to determine whether any statement by Plaintiff meets the definition of an "admission by a party opponent" under Rule 801(d) of the Federal Rules of Evidence. CSL Behring further objects to this interrogatory to the extent that it seeks to impose upon CSL Behring discovery obligations that are greater than those imposed by the Federal Rules of Civil Procedure, which do not require that a party identify party opponent admissions subject to the Federal Rules of Evidence in advance of trial. CSL Behring further objects to this interrogatory to the extent it seeks information that is protected from discovery by the work-product doctrine or which constitutes or discloses the mental impressions, conclusions, opinions or legal theories of an attorney in this or any other litigation.

**RESPONSE**: Subject to and without waiving the foregoing objections, CSL Behring cannot predict which of Plaintiff's statements during the course of her employment with CSL Behring would constitute an admission under Rule 801(d) of the Federal Rules of Evidence.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, CSL Behring refers Plaintiff to

Ms. Cannizzo's notes regarding Plaintiff and the January 19, 2012 and May 7, 2012 memos from

Ms. Cannizzo to Plaintiff, produced in response to Plaintiff's First Request for Production of

Documents, for information responsive to this interrogatory.  See also responses to

Interrogatories 8 and 15 for additional information responsive to this interrogatory.

        **3.**      **List each and every Communication involving any Agent, employee, owner or principal of Defendants Relating to the subject matter of Ms. DiFiore's Complaint, Ms. DiFiore's claims, or Defendants' defenses. For each such Communication, Identify all participants to the conversation, the date and location of the Communication, the substance of each Communication, and Identify each Document which Refers to the Communications, or any of them.**

        **OBJECTION**:  CSL Behring objects to this interrogatory because it is overly

broad as to scope and unduly burdensome.  CSL Behring further objects to this interrogatory to

the extent it seeks information that is protected from discovery by the attorney-client privilege or

the work-product doctrine or which constitutes or discloses the mental impressions, conclusions,

opinions or legal theories of an attorney in this or any other litigation, or which is protected from

disclosure by any other privilege or immunity.

        **RESPONSE**:  Subject to and without waiving the foregoing objections, CSL

Behring is unable to identify every communication pertaining to Plaintiff.  Pursuant to Rule

33(d) of the Federal Rules of Civil Procedure, CSL Behring refers Plaintiff to Ms. Cannizzo's

notes regarding Plaintiff and the January 19, 2012 and May 7, 2012 memos from Ms. Cannizzo

to Plaintiff, produced in response to Plaintiff's First Request for Production of Documents, for

information responsive to this interrogatory.  See also responses to Interrogatories 8 and 15 for

additional information responsive to this interrogatory.

4.      List each and every meeting held by or attended by any Agent, employee, owner or principal of Defendants where the subject matter of Ms. DiFiore's Complaint, Ms. DiFiore's claims, or Defendants' defenses were discussed. Describe each such meeting in detail, Identifying each individual present, the date and location of the meeting, and the substance of each meeting.

**OBJECTION:** CSL Behring objects to this interrogatory because it is overly broad as to scope and unduly burdensome. CSL Behring further objects to this interrogatory to the extent it seeks information that is protected from discovery by the attorney-client privilege or the work-product doctrine or which constitutes or discloses the mental impressions, conclusions, opinions or legal theories of an attorney in this or any other litigation, or which is protected from disclosure by any other privilege or immunity.

**RESPONSE:** Subject to and without waiving the foregoing objections, CSL Behring is unable to identify every meeting in which Plaintiff was discussed. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, CSL Behring refers Plaintiff to Ms. Cannizzo's notes regarding Plaintiff and the January 19, 2012 and May 7, 2012 memos from Ms. Cannizzo to Plaintiff, produced in response to Plaintiff's First Request for Production of Documents, for information responsive to this interrogatory. See also responses to Interrogatories 8 and 15 for additional information responsive to this interrogatory.

5.      Describe with specificity any statement(s) made by any party to this action, or a party's agents or employees, that Relate to the subject matter of Ms. DiFiore's Complaint, Ms. DiFiore's claims, or Defendants' defenses. The description should include, but not be limited to, the name and present address of the individual who made the statement; the content of such statement(s); whether it is recorded in any manner, and if so, by whom and who possesses that statement(s); the time and place of such statement(s); and, if oral, who heard the statement(s).

**OBJECTION:** CSL Behring objects to this interrogatory because it is overly broad as to scope and unduly burdensome. CSL Behring further objects to this interrogatory because it is vague, as the term "statement" is not defined. CSL Behring further objects to this

interrogatory to the extent it seeks information that is protected from discovery by the attorney-client privilege or the work-product doctrine or which constitutes or discloses the mental impressions, conclusions, opinions or legal theories of an attorney in this or any other litigation, or which is protected from disclosure by any other privilege or immunity. CSL Behring further objects to this interrogatory to the extent that it seeks information that is not in the possession or control of CSL Behring.

       **RESPONSE**: Subject to and without waiving the foregoing objections, see response to Interrogatory 3.


       **6.**    **If you have obtained a statement from any person not a party to this action, Relating to the subject matter of Ms. DiFiore's Complaint, Ms. DiFiore's claims, or Defendants' defenses, either orally or in writing, either formally or informally, state: the name and present address of the person who gave the statement; whether the statement was oral or in writing and if in writing, attach a copy; the date the statement was obtained; if such statement was oral, whether a recording was made, and if so, the nature of the recording and the name and present address of the person who has custody of it; if the statement was written, whether it was signed by the person making it; the name and address of the person who obtained the statement; and if the statement was oral, a detailed summary of its contents.**

       **OBJECTION**: CSL Behring objects to this interrogatory because it is overly broad as to scope and unduly burdensome. CSL Behring further objects to this interrogatory to the extent it seeks information that is protected from discovery by the attorney-client privilege or the work-product doctrine or which constitutes or discloses the mental impressions, conclusions, opinions or legal theories of an attorney in this or any other litigation, or which is protected from disclosure by any other privilege or immunity.

       **RESPONSE**: Subject to and without waiving the foregoing objections, CSL Behring has not obtained any statements from any person not a party to this action relating to Plaintiff's claims.

7.      Identify any and all individuals who performed any job duties at any time following Ms. DiFiore's termination that were formerly performed at any time by Ms. DiFiore during her employment with Defendants. Include in Your description the names, professional qualifications, length of service and last known contact information for each individual so identified.

**OBJECTION:** CSL Behring objects to this interrogatory because it is neither

relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of

admissible evidence. More specifically, the identity of any employee who performed Plaintiff's

job duties after she voluntarily resigned is irrelevant to Plaintiff's claims for whistleblower

retaliation and wrongful discharge.

8.      Did Defendants conduct an investigation into the allegations contained in Ms. DiFiore's Complaint or that were raised by Ms. DiFiore during her employment with CSL? If so, describe in full and complete detail the investigation process and the results of the investigation, including identification of the date upon which each such investigation was initiated; each individual who conducted each such investigation; the qualifications of the individual conducting each such investigation (including prior investigational experience, educational background and applicable training); each individual interviewed as part of each such investigation; each Document reviewed as part of each such investigation; each Document created as part of each such investigation and any action taken by Defendants as a result of each such investigation.

**OBJECTION:** CSL Behring objects to this interrogatory because it is overly

broad as to scope, unduly burdensome, and seeks information that is neither relevant to the

subject matter of this action nor reasonably calculated to lead to the discovery of admissible

evidence. CSL Behring also objects to this interrogatory to the extent it seeks information that is

protected from discovery by the attorney-client privilege or the work-product doctrine or which

constitutes or discloses the mental impressions, conclusions, opinions or legal theories of an

attorney in this or any other litigation, or which is protected from disclosure by any other

privilege or immunity.

**RESPONSE**:  Subject to and without waiving the foregoing objections, in the fall of 2010, Plaintiff informed Ms. Morris that she was uncomfortable with her target sales projections for RiaSTAP®.  Plaintiff also asked Ms. Morris to meet with Mr. Neff and Robert Lefebvre, Vice President, US Sales & Marketing, to discuss sales forecasting.  Mr. Neff, Mr. Lefebvre and Ms. Cannizzo then met to discuss sales forecasting in November 2010.  Mr. Neff followed up with Plaintiff a few weeks later and again in 2011, and on each occasion she told him that she did not have any other issues to discuss.  Ms. Morris also followed up with Plaintiff over the course of the next few months following their conversation in the fall of 2010, and Plaintiff had no concerns to raise.  A few days after Plaintiff received a warning letter on January 19, 2012, she informed Ms. Morris that she was uncomfortable with sales forecasting and had always been uncomfortable with it, despite reporting previously that she had no further concerns to raise.  Ms. Morris met with Ms. Cannizzo to discuss Plaintiff's statement.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, CSL Behring refers Plaintiff to the Polaris Report, which was precipitated by concerns raised by employees other than Plaintiff, produced in response to Plaintiff's First Request for Production of Documents, for additional information responsive to this interrogatory.

9.      Were any employees or Agents of Defendants warned, counseled, reprimanded and/or disciplined in any way in connection with the subject matter of Ms. DiFiore's Complaint?  If so, describe in detail the nature of the counseling or discipline, including the date of the counseling or discipline.

**OBJECTION**:  CSL Behring objects to this interrogatory because it is overly broad as to scope and unduly burdensome.  CSL Behring further objects to this interrogatory because it is vague and ambiguous, as "subject matter of Ms. DiFiore's Complaint" is not defined.  CSL Behring further objects to this interrogatory to the extent it seeks information that

is neither relevant to the subject matter of this action nor reasonably calculated to lead to the

discovery of admissible evidence.

**10.** Describe in detail each complaint, charge, report or allegation (whether formal or informal, written or oral) Relating to retaliation for whistleblowing [sic] or otherwise making complaints to Defendants' Human Resources, Compliance, and/or Legal Departments made by any present or former employee of Defendants at any time between 2003 and the present, including the nature and date of the complaint; the Identity of the complainant, Identity of persons who received or were consulted in connection with each complaint, and Describe in Detail any actions taken to rectify the situation.

**OBJECTION:** CSL Behring objects to this interrogatory because it is overly

broad as to time and scope. CSL Behring further objects to the phrase "otherwise making

complaints," which is overly broad as to scope and is vague. Specifically, information regarding

any lawsuits involving any issue other than whistleblower retaliation or wrongful discharge, and

any lawsuits filed before Plaintiff became employed by CSL Behring, are irrelevant to Plaintiff's

claims.

**RESPONSE:** Subject to and without waiving the foregoing objections, Dr.

Alexander communicated to Ms. Hendri his concerns that he was being retaliated against for

expressing concerns about the marketing of several products. Ms. Hendri investigated the

complaint and found it to be unsubstantiated. Ms. Morris also conducted an investigation into

Dr. Alexander's concerns and found them to be unsubstantiated.

**11.** Except for Ms. DiFiore's present lawsuit against Defendants, if, at any time between 2003 and the present, any employee has filed a civil action against Defendants regarding his or her employment, please: Identify each employee who filed the action; state the court, names of the parties, and case number of the civil action, Identify each attorney representing the employee and state whether the action has been resolved or is pending.

**OBJECTION:** CSL Behring objects to this interrogatory because it is overly

broad as to time and scope. CSL Behring further objects to the phrase "regarding his or her

employment," which is overly broad as to scope and is vague. Specifically, information

regarding any lawsuits involving any issue other than whistleblower retaliation or wrongful

discharge, and any lawsuits filed before Plaintiff became employed by CSL Behring, are

irrelevant to Plaintiff's claims.

   **RESPONSE:** Subject to and without waiving the foregoing objections, other

than the instant lawsuit, CSL Behring has not been party to a lawsuit by any employee alleging

whistleblower retaliation or wrongful discharge.

   **12.** **If any part of Ms. DiFiore's employment relationship with Defendants
was governed in whole or in part by any written rules, guidelines, policies, or procedures
established by Defendants, including but not limited to those Related to retaliation for
whisteblowing [sic] or otherwise making complaints to Defendants' Human Resources,
Compliance, and/or Legal Departments, please: Identify the Document and provide a
general description of its contents; state the manner in which the Document was
communicated to Ms. DiFiore; state the manner, if any, in which Ms. DiFiore
acknowledged either receipt of the Document or knowledge of its contents; and Identify the
individual(s) employed by Defendants who are responsible for the administration and/or
enforcement of each policy.**

   **OBJECTION:** CSL Behring objects to this interrogatory because it is overly

broad as to scope. CSL Behring further objects to the phrase "or otherwise making complaints,"

which is overly broad as to scope and is vague. Specifically, information regarding any policies

or procedures involving any topic other than whistleblower retaliation is irrelevant to Plaintiff's

claims.

   **RESPONSE:** Subject to and without waiving the foregoing objections, CSL

Behring maintained the following policies and procedures pertaining to whistleblowing

complaints during Plaintiff's employment: Open Door and Complaint Procedure, Duty to Report

and Non-Retaliation Policy, Whistleblower Policy and Code of Conduct. CSL Behring also

maintained other personnel policies. Pursuant to Rule 33(d) of the Federal Rules of Civil

Procedure, CSL Behring refers Plaintiff to those documents, produced in response to Plaintiff's

First Set of Interrogatories, for a description of their contents and information on administration

and enforcement.  Plaintiff was made aware of the policies through CSL Behring's intranet,

where all employees may access CSL Behring's policies.


       **13.**     **Provide a description of Ms. DiFiore's employment with Defendants,**
**specifying dates of employment, supervisor(s), location(s) where worked, rates of pay,**
**benefits received and the value of such benefits, job description, work schedule, and dates**
**of and reasons for any interruption to or termination of Ms. DiFiore's employment.**

      **OBJECTION**:  CSL Behring objects to this interrogatory because it is overly

broad as to scope and seeks information that is neither relevant to the subject matter of this

action nor reasonably calculated to lead to the discovery of admissible evidence.  CSL Behring

also objects to this interrogatory to the extent it seeks information already in Plaintiff's

possession.

      **RESPONSE**:  Subject to and without waiving the foregoing objections, CSL

Behring hired Plaintiff on April 21, 2008, as Associate Director New Coagulation Products,

reporting to Janice Cannizzo.  Plaintiff worked in CSL Behring's King of Prussia office.  Her

starting annual salary was $147,000.  Effective August 1, 2011, she was promoted to the position

of Director Marketing New Products/Albumin, with an annual salary of $180,284.  She generally

worked Monday through Friday.  Plaintiff's employment with CSL Behring ended on May 16,

2012, when she voluntarily quit.  Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure,

CSL Behring refers Plaintiff to her personnel file and the pertinent job descriptions for

information responsive to this interrogatory.

14.    Provide a description of the Defendants' position regarding Ms. DiFiore's allegations of retaliation and wrongful termination, specifying dates, locations, and person(s) involved or who have personal knowledge.

**OBJECTION**: CSL Behring objects to this interrogatory because it is unduly

burdensome. CSL Behring also objects to this interrogatory to the extent it seeks information

that is protected from discovery by the attorney-client privilege or the work-product doctrine or

which constitutes or discloses the mental impressions, conclusions, opinions or legal theories of

an attorney in this or any other litigation, or which is protected from disclosure by any other

privilege or immunity.

**RESPONSE**: Subject to and without waiving the foregoing objections, CSL

Behring maintains that Plaintiff's allegations of whistleblower retaliation and wrongful discharge

lack merit. At no time did CSL Behring retaliate against Plaintiff. Moreover, Plaintiff was not

wrongfully terminated, as she voluntarily quit her job. See responses to Interrogatories 1 and 15

and CSL Behring's Initial Disclosures for additional information responsive to this interrogatory.


15.    Do Defendants contend that Plaintiff performed her work in a less than satisfactory manner or committed any misconduct? If Defendants make such a contention, describe in detail each and every alleged performance deficiency or alleged incident of misconduct relating to Ms. DiFiore's employment with Defendants, and for each alleged deficiency or incident, provide the date of the alleged incident(s); the names of the individual(s) who observed the alleged incident(s); state whether the alleged incident(s) were discussed with Ms. DiFiore and if so, the date of and participants involved in such discussions; state whether any notes, write-ups, Performance Improvement Follow-Up Forms or other documentation were created regarding the alleged incident(s), and if so the date each such Document was created; and state whether such documentation was provided to Ms. DiFiore, and if so, the date when each such Document was provided to Ms. DiFiore.

**OBJECTION**: CSL Behring objects to this interrogatory to the extent it seeks

information already in Plaintiff's possession.

**RESPONSE**: Subject to and without waiving the foregoing objections, in December 2011, Ms. Cannizzo met with Plaintiff to discuss Plaintiff's job skills, such as her organizational skills, and her unprofessional interactions with Ms. Cannizzo. Plaintiff acknowledged that her behavior toward Ms. Cannizzo was inappropriate and stated that she did not think she [Plaintiff] was able to lead the team. On January 6, 2012, Plaintiff engaged in a verbal altercation with a coworker, Dr. Alexander, during a team meeting. Ms. Cannizzo and Mr. Peters met with Plaintiff to discuss the inappropriate behavior. Ms. Cannizzo issued Plaintiff a written warning, dated January 19, 2012, as a result of that incident. CSL Behring engaged a professional coach to assist Plaintiff with improving her job and interpersonal skills.

Plaintiff also had numerous performance issues throughout the course of 2012, which Ms. Cannizzo addressed with Plaintiff on a number of occasions, both verbally and through email. Those performance issues ultimately led to Ms. Cannizzo, with input from Ms. Hendri, to place Plaintiff on a performance improvement plan. The memorandum setting forth the plan is dated May 7, 2012. Plaintiff also received a warning letter on February 28, 2012, regarding her failure to adhere to company policy with respect to use of her company-issued American Express card, and American Express terminated her account. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, CSL Behring refers Plaintiff to her personnel file, the pertinent job descriptions and Ms. Cannizzo's notes regarding Plaintiff, produced in response to Plaintiff's First Request for Production of Documents, for information responsive to this interrogatory. See also response to Interrogatory 8 for additional information responsive to this interrogatory.

16.    Identify all individuals involved in the decision to take disciplinary action against Ms. DiFiore in 2012 including without limitation, the issuance of a warning letter in January 2012 and the placement of Ms. DiFiore on a Performance Improvement Plan in May 2012, and describe in detail each individual's role in these decisions.

**RESPONSE**: In addition to the individuals identified in the above response to Interrogatory 15, Mara Williams, Esquire, Senior Counsel, was consulted.

17.    Describe in detail Dr. Ingolf Sieper's employment with Defendants, specifying dates of employment, supervisory authority, supervisor(s), location(s) where worked, rates of pay, job description, work schedule, specifying any complaints, formal or informal that have ever been made against Dr. Sieper, specifying any discipline or counseling, formal or informal, that Dr. Sieper has ever been subjected to, and dates of and reasons for any employment transfer, interruption or termination.

**OBJECTION**: CSL Behring objects to this interrogatory because it is overly broad as to time and scope, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. CSL Behring further objects to this interrogatory to the extent that it seeks information of a private, personal and/or confidential nature about an employee of CSL Behring, the disclosure of which would result in an undue invasion of his privacy. More specifically, information related to Dr. Sieper's pay rate, work schedule and any complaints made against him for any issue other than whistleblower retaliation or wrongful discharge are irrelevant to Plaintiff's claims.

**RESPONSE**: Subject to and without waiving the foregoing objections, Dr. Sieper started working for CSL Behring on July 1, 2011 as Executive Vice President Commercial Operations. In that role, Dr. Sieper was responsible for directing CSL Behring's global commercial operations, and he supervised several employees. Dr. Sieper was located in CSL Behring's King of Prussia office. Dr. Sieper retired from CSL Behring in June 2014. In or around August 2012, Dr. Sieper received coaching and compliance training regarding CSL

Behring's policies.  No complaints of whistleblower retaliation or wrongful discharge were made

against Dr. Sieper during his employment with CSL Behring.

        **18.**    **Describe in detail Lynne Powell's employment with Defendants,**
**specifying dates of employment, supervisory authority, supervisor(s), location(s) where**
**worked, rates of pay, job description, work schedule, specifying any complaints, formal or**
**informal that have ever been made against Ms. Powell, specifying any discipline or**
**counseling, formal or informal, that Ms. Powell has ever been subjected to, and dates of**
**and reasons for any employment transfer, interruption or termination.**

      **OBJECTION**: CSL Behring objects to this interrogatory because it is overly

broad as to time and scope, unduly burdensome, and seeks information that is neither relevant to

the subject matter of this action nor reasonably calculated to lead to the discovery of admissible

evidence.  CSL Behring further objects to this interrogatory to the extent that it seeks information

of a private, personal and/or confidential nature about an employee of CSL Behring, the

disclosure of which would result in an undue invasion of her privacy.  More specifically,

information related to Ms. Powell's pay rate, work schedule and any complaints made against

her for any issue other than whistleblower retaliation or wrongful discharge are irrelevant to

Plaintiff's claims.

      **RESPONSE**: Subject to and without waiving the foregoing objections, Ms.

Powell started working for CSL Behring on February 1, 2010 as Senior Vice President,

Commercial Operations, North America.  In that role, Ms. Powell was responsible for overseeing

CSL Behring's commercial operations in North America, and she supervised several employees.

Prior to holding that position, Ms. Powell worked for CSL Behring as Vice President,

Worldwide Commercial Development.  Ms. Powell was located in CSL Behring's King of

Prussia office.  Ms. Powell was not subject to any discipline.  No complaints of whistleblower

retaliation or wrongful discharge have been made against Ms. Powell during her employment

with CSL Behring, which terminated on October 31, 2014.

      **19.**    **Describe in detail Janice Cannizzo's employment with Defendants, specifying dates of employment, supervisory authority, supervisor(s), location(s) where worked, rates of pay, job description, work schedule, specifying any complaints, formal or informal that have ever been made against Ms. Cannizzo, specifying any discipline or counseling, formal or informal, that Ms. Cannizzo has ever been subjected to, and dates of and reasons for any employment transfer, interruption or termination.**

      <u>**OBJECTION**</u>:  CSL Behring objects to this interrogatory because it is overly

broad as to time and scope, unduly burdensome, and seeks information that is neither relevant to

the subject matter of this action nor reasonably calculated to lead to the discovery of admissible

evidence.  CSL Behring further objects to this interrogatory to the extent that it seeks information

of a private, personal and/or confidential nature about an employee of CSL Behring, the

disclosure of which would result in an undue invasion of her privacy.  More specifically,

information related to Ms. Cannizzo's pay rate, work schedule and any complaints made against

her for any issue other than whistleblower retaliation or wrongful discharge are irrelevant to

Plaintiff's claims.

      <u>**RESPONSE**</u>:  Subject to and without waiving the foregoing objections, CSL

Behring hired Ms. Cannizzo on March 26, 2001 as Senior Director Marketing Hemophilia.  Ms.

Cannizzo then held other titles, and currently is Senior Director Immunology Marketing,

reporting to the currently vacant position of Vice President US Marketing.  Until that position is

filled, she reports to Bill Campbell.  In that role, Ms. Cannizzo is responsible for overseeing US

marketing for CSL Behring's immunology products portfolio, and she supervises several

employees.  Ms. Cannizzo is located in CSL Behring's King of Prussia office.  Ms. Cannizzo has

not been subject to any discipline. No complaints of whistleblower retaliation or wrongful

discharge have been made against Ms. Cannizzo during her employment with CSL Behring.

       20.    **Describe in detail Alan Alexander's employment with Defendants,
specifying dates of employment, supervisory authority, supervisor(s), location(s) where
worked, rates of pay, job description, work schedule, specifying any complaints, formal or
informal that have ever been made against Mr. Alexander, specifying any discipline or
counseling, formal or informal, that Mr. Alexander has ever been subjected to, and dates of
and reasons for any employment transfer, interruption or termination.**

      **OBJECTION**: CSL Behring objects to this interrogatory because it is overly

broad as to time and scope, unduly burdensome, and seeks information that is neither relevant to

the subject matter of this action nor reasonably calculated to lead to the discovery of admissible

evidence. CSL Behring further objects to this interrogatory to the extent that it seeks information

of a private, personal and/or confidential nature about an employee of CSL Behring, the

disclosure of which would result in an undue invasion of his privacy. More specifically,

information related to Mr. Alexander's pay rate, work schedule and any complaints made against

him for any issue other than whistleblower retaliation or wrongful discharge are irrelevant to

Plaintiff's claims.

      **RESPONSE**: Subject to and without waiving the foregoing objections, CSL

Behring hired William Alan Alexander, M.D., on August 31, 2011 as Director, Medical

Therapeutic Area Leader, reporting to Christian Peters. In that role, Dr. Alexander was

responsible for, among other duties, supporting and/or leading the development of clinical

strategies to demonstrate the utility of CSL Behring's coagulation products for the management

of perioperative bleeds. He had supervisory authority. Dr. Alexander was located in CSL

Behring's King of Prussia office. Other than the written warning letter, dated January 20, 2012,

that was issued to Dr. Alexander in connection with the verbal altercation with Plaintiff,

referenced above in the response to Interrogatory 15, Dr. Alexander received no discipline.  No complaints of whistleblower retaliation or wrongful discharge were made against Dr. Alexander during his employment with CSL Behring, which terminated on August 3, 2012.


Dated:  October 20, 2014

/s/ Kelly T. Kindig
David S. Fryman
Kelly T. Kindig
Ashley L. Wilson
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 665-8500

*Attorneys for Defendant CSL Behring, LLC*

## VERIFICATION

I, Trina Hendri, verify that I am a Human Resources Director for CSL Behring, LLC, and that I am authorized to and do take this verification on behalf of Defendant CSL Behring, LLC. I have read the attached Objections and Responses of Defendant CSL Behring, LLC to Plaintiff's First Set of Interrogatories and hereby verify that those, based on my personal knowledge and information I have received during the investigation of the facts of this matter, the statements contained therein are true and correct to the best of my knowledge, information and belief.

I understand that the statements herein are made subject to the penalty of perjury, as set forth in 28 U.S.C. § 1746 relating to unsworn declarations under penalty of perjury.

Dated: _10/20/2014_

_Trina J. Hendri_
Trina Hendri

## CERTIFICATE OF SERVICE

I, Kelly T. Kindig, hereby certify that, on this date, a true and correct copy of the

foregoing Objections and Responses of Defendant CSL Behring, LLC to Plaintiff's First Set of

Interrogatories was served on counsel via e-mail and first-class mail, postage prepaid, as follows:

Jennifer C. Bell, Esquire
Bell & Bell LLP
One Penn Center
1617 John F. Kennedy Boulevard, Suite 1020
Philadelphia, PA 19103

Dated:  October 20, 2014                         /s/ Kelly T. Kindig
                                                 Kelly T. Kindig

# Exhibit D

# CSL Behring

## Memo

May 14, 2012

To:        **Trina Hendri, Human Resources**
From:      Marie DiFiore – Director, Critical Care Marketing-New Products
Subject:   Constructive Discharge

This letter is in follow-up to our discussion on May 9, 2012, where I respectfully requested amicable separation from the company which is currently under review. Since a follow-up meeting scheduled for Friday was suddenly canceled, I approached my boss, Janice Cannizzo, to determine next steps. During that discussion I was told there was no clear timeframe for a settlement and that it was "business as usual" until the company determined an appropriate path forward.  The attitude and energy of this discussion was a far departure from good-will demonstrated during our meeting last week and has caused me grave concern.

Trina, I have been a top performer at CSL Behring for over 4 years supported by reviews, awards, and a promotion to full Director in September 2011. However, approximately 8 weeks later my performance suddenly came into question followed by disciplinary action. Based upon current circumstances, I truly believe this is leading to a constructive discharge despite my three attempts to amicably separate from the company. This approach and the current hostile work environment are unacceptable. Therefore, I feel there is no other option but to vacate my position effective Wednesday, May 16, 2012.

*Regards*

*Marie J. DiFiore*

CSL-00000093

# Exhibit E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIE DIFIORE,                              :
                                           :
      Plaintiff,                          :
                                           :
      v.                                  :        CIVIL ACTION NO. 13-05027
                                           :
CSL BEHRING, U.S., LLC, et al.,            :
                                           :
      Defendants.                         :

## SUPPLEMENTAL OBJECTIONS AND RESPONSES
## OF DEFENDANT CSL BEHRING, LLC
## TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant CSL

Behring, LLC ("CSL Behring"), by its undersigned counsel, provides the following supplemental

response to Plaintiff Marie DiFiore's Second Set of Interrogatories:

      **2.**       **The identification, for the time period from Ms. DiFiore's hire through the present, of employees of CSL other than Ms. DiFiore who were issued corporate American Express or other credit cards and had past due balances on such cards at any time, failed to submit monthly expense reports, and/or used their corporate card for personal use including, but not limited to, their job titles, last contact information, and whether the identified employees were disciplined (including the nature and severity of such discipline) as a result of their past due balances, failure to submit monthly expense reports, and/or personal use.**

      **OBJECTION**: CSL Behring objects to this interrogatory because it is neither

relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of

admissible evidence. CSL Behring objects to this interrogatory because it is overly broad as to

time and scope and is unduly burdensome. Specifically, information related to any employees

other than those who reported to Janice Cannizzo is irrelevant to Plaintiff's claims. CSL Behring

further objects to this interrogatory to the extent that it seeks information of a private, personal

and/or confidential nature about current or former employees of CSL Behring, the disclosure of which would result in an undue invasion of their privacy.

RESPONSE: Subject to and without waiving the foregoing objections, of employees reporting to Janice Cannizzo during the relevant timeframe who had corporate American Express accounts (other than Plaintiff), one employee, Kevin Kovaleski carried a balance (*i.e.*, had instances in which his corporate American Express account balance was not paid in full by the due date), and also had instances in which he submitted his expense reports on time, but did not submit the underlying documentation for the expenses with his expense report. Another employee, Tom Sabia, also carried a balance, due to a personal charge on his corporate American Express account that he did not pay before the due date. Ms. Cannizzo reminded Messrs. Kovaleski and Sabia of CSL Behring's policy. Each resolved these issues. Another employee, Nikhil Gandhi, submitted his expense report on time, but did not submit the underlying documentation for the expenses with his expense report. Ms. Cannizzo asked Mr. Gandhi's supervisor, Mr. Sabia, to follow up with Mr. Gandhi regarding the outstanding documentation. Mr. Gandhi resolved the issue. Another employee, Denise Quigley, had an outstanding balance for a personal charge on her corporate American Express account at the time that she separated from employment with CSL Behring. Ms. Cannizzo asked Ms. Quigley to repay the outstanding balance, which she did. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, CSL Behring refers Plaintiff to documents related to the foregoing employees and to Plaintiff, bates labeled CSL-00021007 through CSL-00021274.

Dated:  July 1, 2015

/s/ Kelly T. Kindig
David S. Fryman
Kelly T. Kindig
Ashley L. Wilson
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 665-8500

*Attorneys for Defendant CSL Behring, LLC*

## VERIFICATION

I, Trina Hendri, verify that I am a Human Resources Director for CSL Behring, LLC, and that I am authorized to and do take this verification on behalf of Defendant CSL Behring, LLC. I have read the attached Supplemental Objections and Responses of Defendant CSL Behring, LLC to Plaintiff's Second Set of Interrogatories and hereby verify that, based on my personal knowledge and information I have received during the investigation of the facts of this matter, the statements contained therein are true and correct to the best of my knowledge, information and belief.

I understand that the statements herein are made subject to the penalty of perjury, as set forth in 28 U.S.C. § 1746 relating to unsworn declarations under penalty of perjury.

Dated: 6/29/2015

_____
Trina Hendri

DMEAST #22106282 v1

## CERTIFICATE OF SERVICE

I, Kelly T. Kindig, hereby certify that, on this date, a true and correct copy of the

foregoing Supplemental Objections and Responses of Defendant CSL Behring, LLC to

Plaintiff's Second Set of Interrogatories was served on counsel via e-mail and first-class mail,

postage prepaid, as follows:

Jennifer C. Bell, Esquire<br>
Bell & Bell LLP<br>
One Penn Center<br>
1617 John F. Kennedy Boulevard, Suite 1020<br>
Philadelphia, PA 19103

Dated: July 1, 2015                    /s/ Kelly T. Kindig
                                       Kelly T. Kindig